## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 24-31596 |
| MMA LAW FIRM, PLLC | § § | |
| DEBTOR | § § | |
| MMA LAW FIRM, PLLC<br>Plaintiff<br>v. | § § § § | ADVERSARY NO. |
| THE SANGISETTY LAW FIRM | § § § | |
| Defendant | § | |

## COMPLAINT

MMA Law Firm, PLLC Plaintiff and/or Debtor, files this Amended Complaint against The Sangisetty Law Firm, LLC, pursuant to FED. R. BANKR. P. 7001(1) and (7), requesting actual and punitive damages, equitable relief, and respectfully shows the Court as follows:

**JURISDICTION, VENUE AND PARTIES**

1. This is an adversary proceeding brought by the Debtor seeking a declaratory judgment regarding the determination of property of the bankruptcy estate, and turnover of estate property.

2. This Court has subject matter jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §§ 157 and 1334(b).

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2) and this Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

4. Venue is proper in the Bankruptcy Court for the Southern District of Texas (the

"**Bankruptcy Court**"), pursuant to 28 U.S.C. § 1409.

5. MMA Law Firm, PLLC is the Debtor in Case No. 24-31596 pending in the Southern District of Texas and can be served through its undersigned proposed counsel.

6. Sangisetty Law Firm, LLC (**"Sangisetty"**) can be served with this Complaint and summons through its registered agent Ravi Sangisetty at 3914 Canal Street, New Orleans, LA 70119.

7. MMA Law Firm, PLLC (the, **"Debtor"**) hereby states that it consents to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## RELEVANT BACKGROUND FACTS

8. MMA Law Firm, PLLC (**"Debtor"**) is a litigation firm based in Texas.

9. The Debtor represented thousands of storm victims with property damage claims against their insurance companies following Hurricanes Laura, Delta, Zeta, and Ida (**"MMA Clients"**).

10. The Debtor entered into contingency fee contracts with the MMA Clients, entitling it to contingency fees and reimbursement of expenses (**"Contingency Fee Contracts"**).

11. The Debtor prosecuted claims and filed thousands of lawsuits on behalf of the MMA Clients (**"MMA Cases"**).

12. On March 3, 2023, Judge James D. Cain, Jr., a United States district judge of the United States District Court for the Western District of Louisiana, issued an order suspending the licenses of all attorneys affiliated with the Debtor for ninety days (**"Suspension Order"**).

13. Pursuant to the Suspension Order, the Debtor was ordered, among other things, to notify the MMA Clients of the suspension and that they had the option of either retaining new counsel or

remaining with the Debtor.

14. On August 8, 2023, Judge Cain issued an Order directing the Debtor to physically deliver to the Court "every original undeposited check" related to settlements with MMA Clients that had not yet been deposited by the Debtor ("**Check Order**").[1]

15. In compliance with the Check Order, the Debtor submitted a total of 807 checks, representing $12,673,672.93 in settlements from the MMA Cases (the "**Settlement Checks**"). The Debtor is entitled to a contingency fee, plus expenses, from the Settlement Checks in accordance with the applicable contingency fee agreement and based on the work performed in settling the cases from which the Settlement Checks were obtained.

### SANGISETTY AND THE DEBTOR REACH AN AGREEMENT

16. Following the entry of the Suspension Order and the Check Order, Sangisetty and the Debtor entered into an agreement (the "**Agreement**"), which provided that: (1) Sangisetty would assume representation of the MMA Clients; (2) the Debtor and its co-counsel would be entitled to 45% of any contingency fee received by Sangisetty, along with reimbursement of expenses; and (3) Sangisetty would assist in obtaining reissuance of the Settlement Checks, with the Debtor and its co-counsel receiving 100% of the contingency fee related to Settlement Checks that were negotiated prior to the Suspension Order.

17. Subsequently, Sangisetty began sending legal advertisements to the MMA Clients, informing them that: (a) the Debtor was no longer permitted to practice law in Louisiana; and (b) Sangisetty had been provided with the list of MMA Clients **pursuant to an agreement with MMA**, which is how the clients' contact information was obtained ("**Advertisement**").[2]

18. After distributing the Advertisement, Sangisetty assumed representation of 694 MMA Cases on a contingency fee basis ("**Sangisetty/Debtor Cases**"). A spreadsheet of the

---

[1] Exhibit 1: Order to Turnover Checks
[2] Exhibit 2: Advertisement

Sangisetty/Debtor Cases are attached as Exhibit 3. [3]

19.     In connection with the Sangisetty/Debtor Cases, the Debtor assisted Sangisetty in multiple ways, including developing case management software to facilitate the transfer of client file documents, as well as answering case-specific questions and conducting research.

20.     As set forth in the Agreement, Sangisetty agreed that the Settlement Checks obtained by the Debtor (prior to the Suspension Order) would be reissued by the insurance companies for the Debtor's benefit only.

21.     However, Sangisetty began filing motions in the Sangisetty/Debtor Cases, requesting the Louisiana District Court to enter an order stopping the original check issued on behalf of the MMA Client and the Debtor and reissue a check to Sangisetty and the client (**"Motion to Reissue Checks"**)[4]. The Court granted the Motion to Reissue Checks[5]. However, the Debtor did not receive any funds from the reissued check.

22.     Upon information and belief, Sagisetty had checks reissued in 67 MMA Cases, totaling approximately $1,085,641.01, which Sangisetty received but failed to turnover to the Debtor (**"Reissued Check Funds"**)[6].

23.     Furthermore, Sangiestty has settled hundreds of the Sangisetty/Debtor Cases, resulting in millions of dollars in settlements for the clients (**"Fees and Costs"**). Despite this, Sangisetty has failed to remit any portion of the settlement proceeds to the Debtor.

**CHAPTER 11 BANKRUPTCY FILED AND NOTICE PROVIDED**

24.     On April 9, 2024, the Debtor filed a Chapter 11 bankruptcy petition.

25.     In its bankruptcy schedules, the Debtor disclosed claims against Sangisetty for "possession of attorney's fees and expenses that belong to the Debtor".

26.     Specifically, the Debtor performed substantial legal work that resulted in the issuance of the

---

[3] Exhibit 3: Spreadsheet
[4] Exhibit 4: Motion to Reissue Check
[5] Exhibit 5: Order Granting Motion to Reissue Check
[6] Exhibit 6: Spreadsheet of cases with Reissued Check Funds

Reissued Checks and the work performed in the Sangisetty/Debtor Cases, and asserts that it is entitled to attorney's fees and costs from Sangisetty.

27. The Debtor is liable to numerous creditors for expenses incurred in the Sangisetty/Debtor Cases, which it is currently unable to pay. Since the bankruptcy filing, over $25,000,000.00 in unsecured claims have been filed by creditors who provided services to the MMA Clients and have not been paid.

28. On April 23, 2024, the Debtor provided notice of the bankruptcy filing to Sangisetty via email to rks@sangisettylaw.com (**"BK Notice Email"**).

29. Additionally, on April 12, 2024, the Bankruptcy Noticing Center provided Sangisetty with notice of the Debtor's bankruptcy filing via U.S. mail.

30. Not only did Sangisetty fail to fulfill its obligations under the Agreement regarding the Reissued Check Funds and the proceeds from the settlement of the Sangisetty/Debtor Cases, but in July, 2024, Sangisetty entered into contingency fee agreements with the MMA Clients to pursue legal malpractice claims against the Debtor. These agreements include a 40% contingency fee for all funds recovered, solely for filing a proof of claim in the Debtor's bankruptcy case (**"POC Contingency Fee Agreement"**).[7]

## CAUSE OF ACTION #1 – DECLARATORY JUDGMENT

31. The Debtor incorporates Paragraphs 8 through 30 into Cause of Action #1.

32. The Debtor asserts an interest in a total of 694 Sangisetty/Debtor Cases (**"Fees and Costs"**). Additionally, there are 67 MMA Cases in which checks were reissued, totaling approximately $1,085,641.01(**"Reissued Check Funds"**). Upon information and belief, these reissued checks were received by Sangisetty but were not turned over to the Debtor.

33. The Debtor seeks a declaratory judgment pursuant to 11 U.S.C. § 541, affirming the Debtor's interest in the Fees and Costs and the Reissued Check Funds are property of the bankruptcy estate (as

---

[7] Exhibit 7: Malpractice Contingency Fee Agreement

identified in Exhibits 3 and 6).

34. When considering a declaratory judgment action, the Court must engage in a three-step inquiry: (1) whether an "actual controversy" exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

35. An actual controversy exists between the Debtor and Sangisetty regarding the Debtor's entitlement to the Fees and Costs from the Sangisetty/Debtor Cases and the Reissued Checks. The Debtor claims it is entitled to its fair share of the contingency fees and reimbursement of expenses, as it performed work and incurred costs under contingency fee agreements Sangisetty/Debtor Cases and the cases that resulted in the Reissued Checks.

36. The dispute between the Debtor and Sangisetty is evidenced by the following facts: 1) Sangisetty has refused and failed to turnover the Fees and Costs to the Debtor; 2) Sangisetty entered into contingency fee agreements with the MMA Clients to sue the Debtor for malpractice in the MMA Cases; and 3) allegations contained in a class action lawsuit filed by Sangisetty on behalf of multiple MMA Clients asserting that the Debtor acted improperly.

37. The Debtor has not relinquished its right to claim an interest in any portion of the settlement proceeds from the Sangisetty/Debtor Cases or the Reissued Checks.

55. Under Louisiana, when two attorneys provide legal services to the same client on a contingency-fee basis and one attorney is discharged before resolution, the client is obligated to pay only one contingency fee, which the court allocates between the attorneys. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 at 108 (La. 1979).

56. The amount of the fee is determined by the highest ethical contingency percentage agreed upon in any of the contingency fee contracts executed by the client. *O'Rourke v. Cairns,* 683 So. 2d 697, 702 (La. 1996).

57. Fee apportionment considers factors such as: 1) the time and labor required; 2) novelty and

difficulty of questions involved; 3) skill required to perform legal services; 4) amount involved and the results obtained; and 5) nature and length of the professional relationship with the client. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La. 1979).

58. This ensures a reasonable division of fees based on each attorney's contributions. If the first attorney was not discharged for cause, this analysis concludes the determination. However, if discharged for cause, the court must assess the nature and gravity of the discharge to determine if the discharged attorney is entitled to any fees. *O'Rourke v. Cairns,* 683 So. 2d 697, 702 (La. 1996).

59. Here, the Debtor was not discharged for cause, but even if the Court were to determine that it was, the Debtor is still entitled to a determination of fees and costs under the reasonableness factors discussed above. Therefore, there is a live controversy between the Debtor and Sangisetty regarding who is entitled to the funds from the Reissued Checks and the Fees and Costs arising from each of the Sangisetty/Debtor Cases.

60. The Bankruptcy Court has authority to grant relief and the Debtor respectfully requests that the Bankruptcy Court exercise its broad discretion to decide this declaratory judgment action. A bankruptcy court's jurisdiction is governed by 28 U.S.C. § 1334. District courts, and therefore bankruptcy courts, have exclusive jurisdiction over "all cases under title 11," including jurisdiction over "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e); *In re TMT Procurement Corp.,* 764 F.3d 512, 523 (5th Cir. 2014).

**CAUSE OF ACTION #2: TURNOVER OF PROPERTY OF THE ESTATE**

61. The Debtor incorporates Paragraphs 8 through 30 into Cause of Action No. 2.

62. Pursuant to Section 541(a)(1) of the Bankruptcy Code, "property of the estate" encompasses "all legal and equitable interest of the debtor in property as of the commencement of the case". 11 U.S.C. §541.

63. Section 542(a) mandates that an entity possessing property of the estate must deliver and

account for such property, or its equivalent value, to the bankruptcy estate. 11 U.S.C. § 542.

64.     The Debtor is aware of 694 MMA Cases that Sangisetty acquired an interest in following the Suspension Order (**"Sangisetty/Debtor Cases"**). The Debtor performed significant work and incurred costs and expenses in these cases. The Debtor asserts that, under the contingency fee agreements executed in connection with the Sangisetty/Debtor Cases, it is entitled to its fair share of the contingency fees and reimbursement of expenses that Sangisetty has received (**Fees and Costs"**). The

65.     As discussed above in Paragraphs 14 through 16 and 20-22, and incorporated herein, the Debtor also asserts that Sangisetty received approximately $1,085,641.01 in Reissued Checks that that Debtor has an interest in and has not received from Sangisetty (**"Reissued Check Funds"**).

66.     The Debtor's interest in the Fees and Costs and the Reissued Check Funds are therefore property of the estate. To date, the Debtor has not received Fees and Costs from the Sangisetty/Debtor Cases or the Reissued Check Funds. The Debtor has an interest in both the Fees and Costs from the Sangisetty/Debtor Cases and the Reissued Check Funds, which have not been turned over to the Debtor and these assets constitute property of the estate.

67.     The Debtor has not waived its rights to the Fees and Costs in the Sangisetty/Debtor Cases, nor has it waived its rights to the Reissued Check Funds.

68.     Sangisetty has received and/or holds attorney's fees and costs from the settlement of the Sangisetty/Debtor Cases, both pre- and post-petition.

69.     The Debtor respectfully requests that the Court issue an order compelling Sangisetty to provide a comprehensive accounting of all funds received in connection with the Sangisetty/Debtor Cases to date as well as all funds received in connection with the Reissued Checks.

70.     Additionally, the Debtor requests an order directing the turnover of the Fees and Costs from the Sangisetty/Debtor Cases and the Reissued Check Funds.

Dated: <u>November 10, 2024.</u>

                                              Respectfully submitted,

                                              By: <u>*/s/ Miriam Goott*</u>
                                              Miriam Goott
                                              attorney-in-charge
                                              SBN 24048846
                                              COUNSEL FOR THE DEBTOR

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
miriamgoott@yahoo.com
713.956.5577 (telephone)
713.956.5570 (fax)